UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:24-CR-00097-DCLC-CRW |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES FRANK ARWOOD, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The Grand Jury indicted Defendant James Frank Arwood for possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g). Arwood moved to dismiss the indictment, arguing that this statute is unconstitutional as applied to him. He argues that he is not dangerous, and thus he cannot constitutionally be disarmed. The Court finds that Arwood's criminal history—particularly his recent convictions—show that he is dangerous under *United States v. Williams¸* 113 F.4th 637 (6th Cir. 2024). Accordingly, § 922(g)(1) is constitutional as applied to him. The motion to dismiss is **DENIED**.

## I.      BACKGROUND

In 1989, Arwood broke into a construction storage unit and stole a pickup truck. [1] [Doc. 20-1, pg. 1]. He pleaded guilty to grand larceny. [*Id.* at 4]. Then, in 1990, Arwood broke into a

---

[1] In determining whether a defendant is dangerous to decide an as-applied challenge to § 922(g)(1), the Court may consider "any evidence of past convictions in the record, as well as other judicially noticeable information." *United States v. Williams*, 113 F.4th 637, 660 (6th Cir. 2024). And the Court is not "confined to the fact of conviction alone, but may consider how an offense was committed." *United States v. Morton*, 123 F.4th 492, 499 (6th Cir. 2024). Both parties submitted for consideration Arwood's prior criminal records, though the Government included records that say more about the circumstances of the prior offenses. It appears to the Court that the records are reputable and beyond reasonable dispute, and neither party has in fact disputed them. The Court relies on these records for the fact of Arwood's prior convictions and the nature and circumstances of those convictions.

1

pawn shop. There he stole jewelry, guns, cameras, and personal property. [*Id.* at 6]. For that episode, he pleaded guilty to third degree burglary and grand larceny. [*Id.* at 10].

Arwood's criminal history resumed 32 years later.[2] In July 2022, officers responded to a disturbance in Washington County, Tennessee. Police discovered Arwood at the scene. [Doc. 20-4, pg. 7]. A check revealed an active warrant for his arrest, so they took him into custody. [*Id.*]. When they searched his vehicle, they found 8.5 grams of methamphetamine and drug paraphernalia. [*Id.*]. Arwood later pleaded guilty to simple possession of methamphetamine and failure to appear. [*Id.* at 1; Doc. 20-3, pg. 1]. The state court placed Arwood on supervised probation. [Doc. 20-4, pg. 1].

Then, in February 2023, police in North Carolina discovered Arwood slumped over in a car while parked on a roadway. [Doc. 20-2, pg. 2]. When they searched the car, they found three glass pipes (common to ingest methamphetamine), baggies containing residue, and cut straws containing residue. [*Id.*]. They also found two firearms. [*Id.*]. For that conduct, Arwood pleaded guilty to attempted possession of a firearm by a convicted felon. [Doc. 14-1, pg. 2]. He was sentenced to 18 months' probation. [*Id.*].

Finally, on June 21, 2024, officers observed a vehicle leaving a known drug house.[3] [Doc. 20-5, pg. 1]. They ran the vehicle's registration; it was registered to Arwood. [*Id.*]. They

---

[2]      The Court proceeds chronologically based on the offense conduct, not the relevant conviction or sentencing dates. It appears from the court records that Arwood was convicted and sentenced for the North Carolina offense before he was convicted and sentenced for the Tennessee offenses, but Arwood committed the Tennessee offenses first.

[3]      The Court provides the information related to Arwood's instant offense for background and context only. That conduct, at this point, is only alleged. It's unclear, then, how much the Court could consider it in making its dangerousness determination without a trial on the merits. *See United States v. Witherspoon*, No. 6:23-CR-39, 2024 WL 4819433, *5 (E.D. Ky. Nov. 18, 2024) ("The Government potentially sought to rely on conduct all the way up to and including that behind the instant charges. Problems lurking in that exercise need not be resolved in this case, which is not a close one."). In any event, the dangerousness determination does not hinge on the instant offense conduct. Arwood's record from before the instant offense is sufficient to make the determination.

discovered that Arwood's license was suspended. [*Id.*].  They launched a traffic stop on the vehicle and identified Arwood as the driver. [*Id.*].  Arwood told the officers that he was a convicted felon, and that he had a firearm in the car that someone gave him. [*Id.*].  For that conduct, a Grand Jury indicted Arwood in this Court. [Doc. 1].  The indictment charged him with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  [*Id.*].

Arwood moved to dismiss the indictment. [Doc. 14].  He argues that § 922(g)(1) is unconstitutional as-applied to him under the Sixth Circuit's decision in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), because he can prove that he is no longer dangerous.  The United States responded. [Doc. 20].  They maintain that Arwood cannot surmount the presumption that he is dangerous, mainly because of his recent criminal history. [*Id.*].  At an evidentiary hearing, the Court received evidence from the parties and heard oral argument on the motion. [Doc. 25].  Having been fully briefed and argued, the matter is ripe for resolution.

## II.    LEGAL STANDARD

The Second Amendment to the Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  The Second Amendment provides an individual right "to keep, for lawful purposes, the kinds of weapons in common usage, like those used for self-defense." *United States v. Williams*, 113 F.4th 637, 643 (6th Cir. 2024) (citing *District of Columbia v. Heller*, 554 U.S. 570, 625, 627 (2008)).  Still, the right is not unqualified, and courts routinely uphold the facial constitutionality of statutes prohibiting felons from possessing firearms. *See Kanter v. Barr*, 919 F.3d 437, 442 (7th Cir. 2019) (collecting cases).

In 2022, the Supreme Court decided *New York State Rifle & Pistol Assoc. v. Bruen*, 597 U.S. 1 (2022).  That case "required the government to show that a regulation's infringement on a

3

particular citizen's Second Amendment right was 'consistent with this Nation's historical tradition of firearm regulation.'" *Bruen*, 597 U.S. at 17; *see also Williams*, 113 F.4th at 644. And, *United States v. Rahimi* finalized the inquiry, clarifying that "the relevant inquiry is whether the challenged regulation is consistent with the 'principles that underpin our regulatory tradition.'" *Williams*, 113 F.4th at 645 (quoting *United States v. Rahimi*, 602 U.S. 680, 692 (2024).

It was with this backdrop that the Sixth Circuit decided *Williams*. There, the Sixth Circuit held that § 922(g) is "constitutional on its face and as applied to dangerous people." *Id.* at 662–63. But "each member of that disarmed group" must have "an opportunity to make an individualized showing that he himself is not actually dangerous." *Id.* at 663. In short, § 922(g) is a valid class-wide disarmament of dangerous people, but each member of the class must have a chance to show that they are not actually dangerous. *Id.* at 661.

The Sixth Circuit left the dangerousness determination—and thus the determination of whether § 922(g) is constitutional as-applied to a particular defendant—to the district courts. *Id.* at 657. To assist in the determination, the Sixth Circuit grouped felons' prior convictions into three categories. First are convictions for "crimes against the person," like murder, rape, assault, and robbery. *Id.* at 658. Offenses of this kind are "at least strong evidence that an individual is dangerous, if not totally dispositive on the question." *Id.* at 658. Second are crimes that "while not strictly crimes against the person [] may nonetheless pose a significant threat of danger." *Id.* at 659. "These crimes do not always involve an immediate and direct threat of violence against a particular person . . . like burglary." *Id.* at 659. "[B]urglary is dangerous because it creates the possibility of a violent confrontation between the offender and occupant." *Id.* at 659 (internal citations and quotations omitted). "Ultimately, most of these crimes put someone's safety at risk" and justify a finding of dangerousness. *Id.* at 659. An individual in either of these two categories

4

"will have a very difficult time, to say the least, of showing he is not dangerous." *Id.* at 663. The final category includes crimes that cause no physical harm to another person or the community, like mail fraud or making false statements. *Id.* at 659. District courts may have no trouble concluding that persons in this category are not dangerous. *Id.* at 659.

In evaluating a defendant's dangerousness, a court may consider a defendant's entire criminal record, not just the felony conviction underlying their § 922(g) charge. *Id.* at 659–60. The Court should make a fact-specific dangerousness determination "after taking account of the unique circumstances of the individual, including details of his specific conviction." *Id.* at 663.

## III.    ANALYSIS

The issue for the Court is whether Arwood can show that he is no longer dangerous. If he can meet that burden, § 922(g)(1) is unconstitutional as-applied to him, and the indictment must be dismissed. If he cannot, § 922(g)(1) is constitutional as-applied to him, and his motion to dismiss should be denied.

Arwood was convicted in 1990 of third-degree burglary. [Doc. 20-1, pg. 10]. The Court in *Williams* described burglary as an offense that "put[s] someone's safety at risk" and usually justifies a finding of dangerousness. *Id.* at 659. So Arwood has a "very difficult" burden to meet to show that he is not dangerous.[4] *Id.* at 663.

To be sure, three decades have passed since Arwood's original felony convictions. [*See* Doc. 20-1]. And some courts have held that older convictions should be given less weight than recent ones. *See United States v. Jennings*, 754 F. Supp. 3d 763, 770 (E.D. Mich. 2024) ("Common sense … strongly suggests [older convictions] should be given less weight."). The Court agrees

---

[4]    Arwood's counsel argues that burglary is not a violent crime, and that the *Williams* court erred in treating it as one. [Doc. 14, pg. 8–9]. *Williams* binds the Court, so the Court must follow its analytical framework. Counsel acknowledges that and tells the Court that she made these arguments for preservation of the record only. [*Id.* at 1]. Counsel's objections to *Williams*' reasoning and holdings are noted but overruled.

with that general proposition. Arwood's thirty-year-old convictions for burglary and grand larceny speak little to whether he remains dangerous, particularly because there is no indication from the records that either offense involved any actual violence against a person. If this were Arwood's only prior conviction, he might meet his burden even though it is a heavy one.

Arwood cannot do so here, though, because of his recent convictions. In the past three years, Arwood has possessed methamphetamine and attempted to possess a firearm. [Doc. 20-4, pg. 7; Doc. 20-2, pg. 2]. The circumstances of these offenses—especially the North Carolina conviction—are troubling. Guns and drugs are a dangerous combination. *Smith v. United States*, 508 U.S. 223, 240 (1993). And during the North Carolina offense, Arwood seems to have operated a vehicle while intoxicated with multiple firearms in the car. [Doc. 20-2, pg. 2]. That conduct endangers the public and law enforcement officers. Under these circumstances, the Court has no trouble concluding that Arwood remains dangerous.

Arwood sought to meet his burden by presenting the testimony of two witnesses. The first, Mr. Stone, knew Arwood only as his neighbor. He had limited knowledge of Arwood's criminal history, and it was clear that the two were not close friends. The best Mr. Stone offered Arwood was that he did not believe Arwood to be a dangerous person, and that Mr. Stone never saw Arwood threaten or consider threatening anyone.

The second witness, Ms. Parsons, had known Arwood for 40 years, and had an on-again, off-again romantic relationship with him since 2011. Ms. Parsons testified that she did not believe Arwood was dangerous and that he was generally docile. But she was unaware of the exact circumstances of his North Carolina and Tennessee offenses, though she knew he was on probation. And she herself had a criminal history that included burglary, shoplifting, and driving on a suspended license. When she testified, she was in a romantic relationship with Arwood.

6

Neither testimony, nor the combination of the two, overcome Arwood's burden here. Mr. Stone believed Arwood was not dangerous, but his experience with Arwood was so limited that his testimony does not carry significant weight. His testimony is relevant, but not that insightful. Ms. Parsons' testimony does not sway the result, either. First, the Court assigns it less weight because—as Arwood's romantic partner—Ms. Parsons has a vested interest in his not being incarcerated, and thus a motive to paint Mr. Arwood in a favorable light. Second, Ms. Parsons herself was not an exceedingly credible witness. She lacked knowledge about the specifics of Arwood's criminal history. She seemed to omit and forget certain details. And Ms. Parsons herself had a substantial criminal history. In short, neither testimony—alone or in conjunction—is sufficient for Arwood to overcome his heavy burden.

## IV.     CONCLUSION

While Arwood's original burglary and grand larceny convictions themselves do not sway the Court significantly in either direction, Arwood's "entire criminal record" demonstrates that he remains dangerous under *Williams*. Arwood presented insufficient evidence to overcome his burden. Because he did not meet that burden, § 922(g) is not unconstitutional as-applied to him. The Motion to Dismiss [Doc. 14] is **DENIED**.

**SO ORDERED:**


s/ Clifton L. Corker
United States District Judge